Good morning. Good morning. May it please the court, Christopher Stender on behalf of the petitioner Tania Bibiano, and I also would like to reserve two minutes of my time for rebuttal. Today this court must decide if the mens rea for accidental conduct under California section 245A based on reckless driving is sufficient to be a crime of violence. Even though reckless driving was an example cited in both Leo Kahl and Fernandez-Ramirez's Ruiz of something that would be insufficient to be a crime of violence. Well, what was she convicted of? 245. Assault with a deadly weapon, right? Not reckless driving. But that's in fact what she did. She drove a vehicle, she was unlicensed, inexperienced driver, drove a vehicle and had no intent to harm anyone. Those are the operative facts under which she was convicted. And she hit someone, and then she kept driving, and she hit someone else, and she hit more cars, and she kept driving, and she hit more cars. I mean, this was assault with a deadly weapon, and that's what she was convicted of, right? She was convicted of that. But nonetheless, as Decombs made clear, applying the Taylor categorical approach is an elements-based inquiry where only facts found unanimously by a jury and beyond a reasonable doubt constitute elements. Thus, Decombs, our argument, abrogates Grajeda because California juries do not have to find the key element that the defendant intended to use force against another. And didn't Jimenez-Arzate already reject that argument? Well, the problem with Jimenez-Arzate is that the appellant in Jimenez-Arzate argued that Grajeda was no longer good law, but for reasons different than what is being argued today in this appeal. Specifically, Jimenez-Arzate did not argue that Grajeda should be overruled because it is irreconcilable with Decombs. And that three-judge panel in Jimenez-Arzate did not have an opportunity to weigh in on these arguments, finding whether or not the Decombs element-based approach would… Are you saying that the panel of our court this year didn't know about Decombs? It's pretty unlikely, right? Well, it really doesn't matter. Those are the arguments that were raised before the appellate panel, so if the court didn't have the opportunity to weigh in on these arguments, they didn't specifically seek to overrule Grajeda based on the element-based approach of Decombs. So that's not been argued. Okay, so you've got a new theory to reach a different result than the prior panel, but aren't we still bound by the result reached by the prior panel? Not if there's intervening higher authority, which you have in Decombs. Decombs was before Jimenez-Arzate, right? So how is it intervening authority? It's intervening because the element-based approach of Decombs was not applied and those arguments weren't made in Jimenez-Arzate, so the panel didn't consider those arguments when it looked at what the court, I think, is being forced to look at today. Okay? Well, there's a lot of equities in her favor. There's overwhelming equities, Your Honor. In fact, her family's here today, her mother, father, husband, other family members. It's really just a tragic incident, what happened. It is, it is. She's married to a U.S. citizen. She's lived here since she was an infant, and the members of her family are all permanent residents or citizens, and she wanted to take the laundry to a laundromat, and her husband was too tired, I guess, to drive her there. So she got in the car, didn't have a license, really didn't know how to drive, and anyway, she got, hit someone, and then didn't stop, and then other things happened. Right. Went on the curb, and no one was, people were hit, but no one killed or severely injured. Right, there's no alcohol, there's no drugs, there's no aggravating factor. No alcohol, no drugs. She was just behaving panicky, panically, and stupidly. And how long has she been in jail now? She's been detained in the Eloy Detention Center for two years. She's not been released on bond. So she's been in immigration detention two years. I think she did about one year or so in criminal custody also. So she's been in detention for two years. Did she serve any time for the hit and run? Yes, she did also. I think about one year. I think it was a two-year sentence, and she did about a year. So she's been incarcerated for over three years. Well, she got a two-year sentence for that, and she completed that sentence. And so she's been in prison now for, in one form or another, for probably close to four years, three and a half, four years. Correct. And she's in this Elroy, Arizona Detention Facility. Eloy. What is that? Eloy. Well, you know. In the middle of nowhere. Elroy. Halfway between Phoenix and Tucson. Leroy. Leroy was here, or Kilroy was here. All right. So I don't know. I just wondered whether this is a case here where she might get, the government might exercise its discretion not to prosecute her for the offense and continue to seek to kick her out of the country. Because, I mean, her child now, she's about 26, 27 years old. Yes. And does she speak Spanish? She speaks predominantly English, Your Honor. What? I think she speaks English predominantly, Your Honor. Well, she grew up in this. She doesn't really know any other place except America. That's correct. Yeah. That's correct. And, of course, it's the aggravated felony charge through the crime of violence is what bars her for any form of relief or any kind of discretion to be exercised by the immigration judge. But what we have here in Petitioner's own case is a person who's been convicted under Section 245 for merely accidental conduct stemming from an automobile accident. The petitioner did not intend to use force against another. The Gray-Hated Court at page 1196 also acknowledged that a California court had approved a jury instruction stating that the government need not prove that a defendant actually intended to use force against someone. There's a citation to a California appeals court, People v. Flores. This is probably why the petitioner was actually convicted of the 245 offense. The Gray-Hated Court also looked to Jeroen Salinas for support, but the Jeroen Salinas Court noted that today we do not address the broader question of whether all forms of assault under California Penal Code are crimes of violence. So I believe the court's prior jurisprudence under Gray-Hated, under Jeroen Salinas, are called into question if the court would conduct an elements-based approach under discounts. Okay. How old is she? Twenty-six, the respondent. She's 26, 27. I figured that out. So maybe we should hear from the government. How old is your child? About four years old? I believe so, Your Honor, yes. Very young. All right. May it please the Court, Jeremy Byland on behalf of Respondent. Why can't we work something out for her? Your Honor, the crime was considered very serious by both witnesses. She hadn't driven that car. She didn't know how to drive. She panicked. She's not a criminal. She was just kind of foolish to do what she did. She's already been in custody for three and a half years. That's more than you get for manslaughter sometimes. But, I mean, it was very serious, and the child did have to be airlifted, who was dragged onto her car, Your Honor. Well, how is that child? I mean, we know that she survived, or else this would be a different case, Your Honor. Yeah, well, we don't know anything else, do we? We don't, Your Honor. Have you checked on it?  Well, you know, how do you know that? It's in the record, Your Honor. Is it in the record? Yes, Your Honor. Well, maybe that record is incorrect. But it seems to me that she panicked. She didn't know how to drive. She would behave stupidly. She's lived her whole life here. Yes, Your Honor. So why should we break up this family? Why should we take this child away from the mother? Your Honor, just based on the seriousness of the crime and what she pleaded guilty to, which was assault with a deadly weapon under 245A1, which requires an intentional conduct, and I admit it's a general intent, but it's the intent to wield the car as a weapon. Well, she didn't intend to use the car as a weapon. I mean, she just panicked. That would be a collateral attack on her conviction, Your Honor, that she brought. Well, I'm not talking about legalities. I'm talking about humanity, thinking about people, and what's going to happen to her. Hasn't she been punished enough? Your Honor, I think if you look at the record of what happened, and she crashed into one car, she got out of the car, and she got back in the car, drove the car again, hit a second car, and proceeded to drive. She was kind of crazy when she was out there, you know, from panic. That happens sometimes to people. Well, I take it that she's familiar with cars and with the harm that they can do if they're not driven correctly. I think the general intent requirement requires that the petitioner engage in the violent act, in this case driving the car at people. And the fact that she crashed into a car, first got out of the car, undercuts the accidental argument because she could have just exited the car and left. But she got back in the car, crashed into a second vehicle, then plowed into a group of people, hit a third car while dragging a child, and then tried to flee, and was only stopped by bystanders. So I think that this is all irrelevant to the categorical approach that we're asked to apply here. She pleaded guilty to a crime that Grajeda has held as a categorical crime of violence, and Grajeda has not been undermined by any intervening precedent. Would she have been charged with more serious crimes? Your Honor, she was charged with leaving, I guess, two counts of hit and run, two counts of assault with a deadly weapon. The indictment is on the record, page 819. But at the end of the day, these arguments about whether she actually had the mens rea go to a collateral attack on the conviction, we know under Grajeda, in viewing California Supreme Court case law, that an intentional general intent requirement is necessary, and Grajeda found that that intentional general intent satisfied the concerns in Lee et al. You know, what's a general intent, what's the specific intent? Sometimes that's a mystery. You know that, unless there's been a change, but bank robbery under federal law is a general intent crime. Did you know that? I did not, Your Honor. Well, you'll learn something today. Was she convicted of leaving the scene of the accident? Let me look. So the abstract, the judgment says that she pleaded guilty to leaving the scene of the accident, two counts of leaving the scene of the accident and two counts of assault with a deadly weapon. That's on page AR 817. But the general intent in Grajeda, they described as wielding the weapon in a violent manner, so that would be driving the car at the people. Okay. Thank you. I think the crux of the matter here is that the intent to use force against the person of another cannot be an element of the California assault prosecution under Taylor because California jurors in an assault prosecution are instructed that the state does not have to prove such fact. That's under the California Crim Juror Instruction 875. It's been cited by a California appellate court, and that, in fact, is what happened here. There was no specific intent to use force against another. The petitioner would submit the dements re-applicable. The 245A1 is interpreted by the various California decisions, leaves room for conviction for accidental conduct, and therefore cannot categorically amount to a crime of violence. Accidental conduct is what brought the petitioner before the court today, and this court should find that the petitioner's conviction is not for a crime of violence. Questions? All right. Thank you. The matter is submitted.
judges: Schroeder, Pregerson, Friedland